IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R. DAVID YOST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 5393 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MORGAN CARROLL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, R. David Yost, has filed a Motion to Dismiss Counts I-IV of defendant, Morgan Carroll's Counterclaims, and Affirmative Defenses, I and II.

**A.**

This, it must be said, is an unusual and perhaps troubling case in which the defendant's soon to be former father-in-law is suing his soon to be former son-in-law to collect on what are claimed to be, and are in form, certain promissory notes totaling in excess of $8 million. [Dkt. #1].[1] Those millions are funds Mr. Yost transferred to his daughter and her then husband, Morgan Carroll, during the time of their marriage and which are claimed by the plaintiff to have been loans, secured by promissory notes in which the couple promised to repay "collectively and/or individually" the funds "loaned" to them. [Complaint, Dkt. #1, ¶ ¶ 8, 15]. The defendant filed an Answer along with Affirmative Defenses, Counterclaims and Third Party Claims. [Dkt.#27]. Those pleadings tell a very different story. According to Mr. Carroll's Answer, the intent of the various money transfers by Mr. Yost to Mr. Carroll and his wife – Mr. Yost's daughter – was "to avoid having to pay gift taxes to

---

[1] Mr. Carroll and his wife are currently involved in divorce proceedings in the state court.

the United States Treasury." According to the Answer, the notes were implements of the scheme; it was contended by Mr. Yost that they were gifts and a "tool to keep things straight between the daughters." *See, e.g.*, [Dkt. #27 at ¶¶ 7, 13, 22, 24, 29, 42, 47, 48, 53, 54, 57, 63, 73, 80, 86, 87]. The plaintiff has moved to dismiss the Counterclaim and Affirmative Defenses. [Dkt. #36, 37]. Where the truth in all this lies remains to be seen. The matter before us is limited to the plaintiff's Motion to Dismiss Counts I-IV of the Counterclaim and Affirmative Defenses I and II, with prejudice. [Dkt. #37].

**B.**

We begin with certain unassailable propositions: When considering a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 739 (7th Cir. 2021); *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020). In addition, a court may consider "documents that are attached to the Complaint, documents that are central to the Complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien*, 955 F.3d at 621. "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These principles apply equally to motions to dismiss a counterclaim. *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F.Supp.3d 926, 935 (N.D.Ill. 2019). With these principles in mind, we begin our analysis.

According to Mr. Carroll's Counterclaim, Mr. Yost, the plaintiff and the soon-to-be-the defendant's former-father-in-law, is in the habit of making lavish loans to his daughter, Anne, on promissory notes that he assures her he will never enforce. [Dkt. #27, ¶¶ 1-11]. Mr. Yost continued

2

the practice when his daughter married the defendant, Mr. Carroll. Mr. Yost made two "loans" to his daughter, Anne, *and* her husband. The "loans" were evidenced by promissory notes. There was a $1.5 million loan in April 2009, secured by a promissory note due in April 2014, which the couple used to purchase a home in New York City for $2,700,000.00. When that home was sold – for $5,600,000.00 in July 2014 – they did not pay off the note, but instead retained the proceeds of the sale. Mr. Yost rolled the outstanding notes into a consolidated note in the amount of $2,530,600.00. [Dkt. #27, ¶ ¶ 14-21, 25, 28-30].

The couple then moved to Chicago and purchased another home at a cost of $3,500,000.00. Mr. Yost made them another "loan" secured by a promissory note in November 2016, this time in the amount of $4.5 million. [Dkt. #27, ¶ ¶ 33-36].[2]

Mr. Yost allegedly made each of these "loans" with a proverbial nod and a wink. As Mr. Yost's letters to his daughter and son-in-law explained, the loans were actually intended to be gifts, but Mr. Yost went through the formality of the promissory notes so he would not incur gift taxes. [Dkt. #27, Page 21/40; Page 30/40; Page 35/40]. According to the Counterclaim, these transactions were to "disguise funds that Yost gifted to Anne and Carroll in order to evade taxes. [Dkt. #27 at ¶ 80]. Paragraph 87 asserts that these transactions were "void *ab initio* as made for an illegal purpose." Again, it is alleged that "the purpose of the purported 'singular notes' was to disguise gifts to Anne and Carroll in order to evade taxes." Indeed, the Counterclaim asserts that the notes were "void *ab initio* as made for an illegal purpose." Mr. Yost, it is alleged, never intended to collect any

---

[2] Attached as Exh. 1 to Mr. Carroll's Answer, Affirmative Defenses, Counterclaims, and Third Party Complaint is a hand-written note from plaintiff to his daughter that reads as follows: "Annie – attached is a very simple promissory note for you to sign so that the money provided for your apartment does not count as a gift, for which gift taxes have to be paid. If you could get your signature notarized it would be super. I Love You, Dad." The note is dated 7/1/03. The handwritten note is accompanied by a promissory note dated 7/1/2003 by Anne K. Yost.

of the interest that accrued on the notes. [Dkt. #27, Page 35]. Mr. Yost also explained that he intended that the notes would be forgiven upon his death, at which time his estate would even out all these extravagant gifts to Anne and his other daughters. [Dkt. #27, Page 30/40; Page 35/40].

Unfortunately for Mr. Carroll, he may be what Mr. Yost called "extraordinarily successful professionally" and a "wonderful, loving, and effective parent[]", [Dkt. #27, Page 30, 35/40], but he isn't blood – or exempt from the rigors and consequences of divorce. Thus, when his daughter filed for divorce on June 16, 2016, Mr. Yost looked to Mr. Carroll for payment on the Notes, with accumulated interest! For her part, Anne, according to the Counterclaims, has had her proverbial father's cake and ate it, too. When she applied for mortgages, she did not list the notes as liabilities. [Dkt. #27, ¶ ¶ 24, 32].[3] But, she did declare them as liabilities during divorce proceedings. [Dkt. #27, ¶ 38]. Mr. Yost demanded payment on August 28, 2020, and when the son-in-law, Mr. Carroll, refused, the father sued Mr. Carroll in short order on September 11, 2020.

### C.

First, Mr. Yost argues that Mr. Carroll's fraudulent inducement Counterclaim and two Affirmative Defenses must be dismissed because their sole basis "is that, at the time the Notes were executed, Yost represented that he would not enforce the Notes in the future." [Dkt. #37, at 4]. It is Mr. Yost's contention that a promise not to do something in the future is generally not actionable as fraud under Illinois law. The single case cited in the Motion to Dismiss is *Ault v. C.C. Svcs, Inc.*, 232 Ill.App.3d 269, 597 N.E.2d 720 (1992), which says that "[g]*enerally*, under Illinois law... the alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct." (Ellipsis in original)(Emphasis added). Other cases articulating this general

---

[3] Depending on the circumstances there may be some concern over laws relating to bank fraud.

principle are *Albright v. Starwood Retail Partners, LLC*, 2021 WL 463066, at *5 (N.D. Ill. 2021); *Merrilees v. Merrilees*, 2013 Ill. App. (1st) 121897, ¶ 41 ("[A]ssurances as to future events are generally not considered misrepresentations of fact."); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F.Supp.2d 759, 768 (N.D. Ill. 2011) (applying Illinois law) ("[T]he alleged misrepresentation must be one of present or preexisting fact."). But, it must be remembered, "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting).

As Mr. Yost reads the Counterclaim against him, his "promise to not enforce the Notes in the future is a textbook example of a non-actionable statement of future intent or conduct." [Dkt. #37, at 4]. Mr. Carroll argues that the allegations of the Counterclaim amount to a "scheme to defraud" and thus allow an exception to the general rule where the "false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334 (1977). But, Mr. Carroll's allegations in his Counterclaim do not fit that exception.

Mr. Carroll's Counterclaim alleges that Mr. Yost made the following misrepresentations of material fact:

> a. that the purported "notes" were to be executed for the sole purpose of avoiding taxes; and
>
> b. that he never intended to collect the purported amounts due under the purported "notes" (the "Misrepresentations").

[Dkt. # 27, ¶¶ 63, 73]. And, his Counterclaim further alleges that "Yost and Anne knew or believed that all the Misrepresentations were false when Yost made them to Carroll." [Answer and Counterclaim, Dkt. # 27, ¶¶ 64, 74]. But, Mr. Carroll contradicts those allegations by also alleging

5

that Mr. Yost would never have sought to enforce the notes had Mr. Carroll and Anne not gotten divorced [Dkt. # 27, ¶. 45] and that "[a]t the time of their making, it was not the intention of any of the parties to enforce the purported 'notes.'" [Dkt. #27, ¶ 79]. It was the divorce action that triggered the present situation is clear from the pleadings in the case. But, that takes this out of the "scheme exception." As the Seventh Circuit explained in *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007), there are limits to the "scheme exception":

> A claim for fraud, promissory or otherwise, requires a showing that, at the time the allegedly fraudulent statement was made, it was an intentional misrepresentation. For promissory fraud claims, this requirement means that, when the promise was made, the promisor had no intent to fulfill it; if the promisor simply later changed his mind, an action for fraud will not lie.

493 F.3d at 853. As alleged in the Counterclaim, this is a "changed his mind" case, and the "scheme exception" is thus inapplicable.

Indeed, Mr. Carroll's response brief shows where he is mistaken. As the brief puts it:

> When Yost asked Carroll to execute the purported "notes," Yost represented to Carroll that the "notes" were simply vehicles to evade gift taxes. Now, after Yost's daughter filed a petition for divorce, Yost claims that the "notes" were valid and enforceable and seeks only to enforce them against Carroll. Which leads to the obvious question, was Yost lying then, or is Yost lying now?

[Dkt. #48, at 1-2]. That is not accurate, since one is not mutually exclusive of the other. Mr. Yost representing that the notes were a tax dodge and at the same time saying he wouldn't seek to enforce them is not the same as representing that they were invalid or unenforceable. The facts Mr. Carroll alleges are that Mr. Yost represented that he was not going to enforce the notes. He clearly changed his mind because of the divorce. Accordingly, the claims for fraudulent misrepresentation and

negligent misrepresentation[4], and the affirmative defense based on fraud, are dismissed.

One additional point needs to be made. In his response brief, Mr. Carroll seems to argue that he can assert facts that scuttle his claim – for example, that Mr. Yost only sought to enforce his notes because of the divorce and that the parties did not intend to enforce the notes at the time they were executed – because Fed.R.Civ.P. 8(d)(3) allows "[a] party [to] state as many separate claims or defenses as it has, regardless of consistency." [Dkt. #48, at 2-3]. But Mr. Carroll is pleading inconsistent *facts*, as opposed to inconsistent claims or defenses. While the pleading rules "permit inconsistencies in legal theories", they "do not tolerate factual inconsistencies in a complaint." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)(citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999). Here, Mr. Carroll's factual assertions in his Answer, Affirmative Defenses, Counterclaims and Third Party claims [Dkt. #27] indicate that Mr. Yost had no intention of enforcing the notes when they were made. Thus, his telling Mr. Carroll that he had no intention to enforce the notes was not a misrepresentation of his intentions *at the time the representations were made. See also, Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016)(A "plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits."); *Sabrina Roppo v. Travelers Complaint. Ins. Co.*, 869 F.3d 568, 591–92 (7th Cir. 2017)(plaintiff "pleaded herself out of court" by asserting facts that contradicted her fraudulent and negligent misrepresentation claims).

---

[4] The negligent misrepresentation claim also fails because Mr. Carroll has not pled that Mr. Yost owed him a duty to communicate accurate information. *See Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 549 (7th Cir. 2020). *See also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 335 (2006)("Where, as here, purely economic damages are sought, this court has imposed a duty on a party to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions.").

C.

Next, Mr. Yost argues that the civil conspiracy claim in Count III of the Counterclaims against Anne and him (Dkt. #27 at 17 ¶ ¶ 78-84) must be dismissed because it fails to identify any wrongful action taken in furtherance of the supposed goal. Count III incorporates ¶ ¶ 1-45 of the Counterclaim and thus the specific allegation regarding the illicit purpose of the enterprise – namely to evade taxes. Count III explicitly charges that the "intent and purpose of the 'notes' was to disguise funds that Yost gifted to [his daughters] in order to evade taxes." These allegations appear in various forms throughout the Counterclaim.

A claim for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort. *Arora v. Diversified Consultants, Inc.*, 2021 WL 2399978, at *5 (N.D. Ill. 2021). "The gist of a civil conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement." *Scott v. Aldi, Inc.*, 301 Ill.App.3d 459, 703 N.E.2d 526, 529 (1998). *See also Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63–64, 645 N.E.2d 888, 894–95 (1994). As Mr. Yost argues, Mr. Carroll merely alleges that the act in furtherance of the alleged conspiracy is enforcing the notes against him. [Dkt. #34, ¶. 81]. So, the conspiracy claim fails for the same reason the fraudulent and negligent misrepresentation claims do. Finally, there is the illegality defense and counterclaim. The Counterclaim alternates between calling Mr. Yost's plan tax avoidance [Dkt. #34, ¶ ¶ 13, 18] and evasion. The former is legal, the latter is not. So this defense, as is pled, is also dismissed. While, Mr. Yost's Motion to Dismiss the Counterclaim is granted, the dismissal is without prejudice. To put it colloquially, there is a good deal of smoke here, and Mr. Carroll should be allowed to adequately allege there is a fire. *See generally Nelson v. City of Chicago*, 992 F.3d 599, 603 (7th Cir. 2021); *Runnion v. Girl Scouts of*

*Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519‒20 (7th Cir. 2015).

## EPILOGUE

Mr. Yost claims that "it is true chutzpah" for Mr. Carroll to have filed the Counterclaim he did in light of the latter's admitted involvement in the "loan" transactions. [Dkt. #37 at 8].[5] But, it was Mr. Yost who brought the family's dirty laundry to federal court, and given the repeated allegations by Mr. Carroll of an attempt by Mr. Yost to evade gift taxes – not to mention the fact that the tax-payers are, in effect, subsidizing this case,[6] – the needle on the "chutzpah" detector would seem to point to Mr. Yost perhaps as much as it does to Mr. Carroll – depending, of course, on the truthfulness of the allegations by Mr. Carroll.[7] Where the truth lies remains to be seen. For now, plaintiff's Motion to Dismiss is granted, but without prejudice to the repleading of the Counterclaim and Affirmative Defenses.

---

[5] Originally a Yiddish term, "chutzpah" has come to have an almost doctrinal place in federal law. *See, e.g., Phoenix Herpetological Society v. United States Fish & Wildlife Svc,*, 998 F.3d 999, 1005 n. 13 (D.C.Cir. 2021)("This argument violates our chutzpah doctrine."). The term first appeared in a federal case in *Weir v. United States*, 474 F.2d 617, 620 (Court of Claims 1973) and has been used in hundreds of federal cases thereafter.

[6] *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990)("The interests of justice go beyond the interests of the parties to the particular suit; ... delay in resolving a suit may harm other litigants by making them wait longer in the court queue."); *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015)("[W]hy should a court supply a subsidized dispute-resolution service [for unnecessary disputes] ... when other litigants, who do need the court's aid, are waiting in a queue?").

[7] In Mr. Carroll's various pleadings in this case, he uses the word "illegal" five times and he uses the word "evade" four times.

## CONCLUSION

For the preceding reasons, the Motion to Dismiss [Dkt. #36] is granted, without prejudice.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/20/22