IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R. DAVID YOST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 5393 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MORGAN CARROLL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The present diversity case involves a seemingly straightforward attempt by the plaintiff to collect on what the Complaint alleges are two "promissory notes" totaling $8,261,333.79, plus interest, costs, and attorneys' fees. [Dkt. #1 at 2]. One "note" for $2,500,000 was executed in 2015, while the other for $4,500,000 was executed a year later. The "notes" were signed by the defendant and his then wife, Anne Yost Carroll, who is also the daughter of the plaintiff. According to the Complaint, the "notes" were given in connection with what purported to be "loans" from Mr. Yost totaling approximately $7,000,000, made to the then married couple for the purchases of homes by them.[1] No payments were made on the "notes," and until recently none were due. The "notes" provided they were to be construed under Illinois law.

In about mid-June 2020, Mr. Carroll and Anne became embroiled in divorce proceedings in the Illinois courts. About two months later, Mr. Yost demanded from Mr. Carroll payment on the "notes" of over $8 million, which included claimed interest. [Dkt. #1]. No demand was made on

---

[1] Of this amount, a portion was, according to the defendant's Amended Pleadings [Dkt. #77], given to Anne before her marriage to Mr. Carroll.

plaintiff's daughter even though she appeared as a "co-signer" on the "notes." When Mr. Carroll refused to make payment, this suit followed. Anne was not named as a co-defendant.

Essentially taking the position that "looks can be deceiving," *Heyde v. Pittinger*, 533 F.3d 512, 514 (7th Cir. 2011), Mr. Carroll's original Affirmative Defenses [Dkt. #34] contended that the large transfers of money were gifts, and that the claimed "notes" were not notes in any legal sense, but in form only. It was alleged that, in reality, Mr. Yost had orchestrated a scheme to evade the payment of gift taxes to the United States on large transfers of money to his daughter and her then husband, Mr. Carroll. According to the Amended Pleading, Mr. Yost expressed the view that if outright gifts were made, gift taxes would otherwise be owed to the United States – a result he sought to avoid through the alleged contrivance of the "notes."

"Contracts" that are entered into for the purpose of evading taxes may be void as against public policy. *See Dormeyer v. Haffa,* 343 Ill.App. 177, 98 N.E.3d 532 (1951); *Heavenly Ham Co. v. HBH Franchise Co., LLC.*, 2005 WL 331558, at *9 (N.D. Ill. 2005). But, Mr. Carroll's initial pleading also alleged that the "notes" were designed to "avoid" the payment of taxes. [Dkt. 36 at 7, 13, 18, 36, 63 and 73)]. Since evasion is illegal, but avoidance may not be, *Northern Indiana Public Service Co. v. CIR,* 115 F.3d 506 (7th Cir. 1997), and since Mr. Carroll's original pleading seemed to mix and match the two, Mr. Carroll's pleading was dismissed without prejudice. *See Yost v. Carroll,* 2022 WL 185199 (N.D. Ill. 2022) [Dkt. ##65, 66]. This perceived deficiency was sought to be cured by the Amended Affirmative Defenses and Counterclaim. [Dkt. #77].[2]

The Amended Pleading again charged that the claimed "notes" were not notes in any legal sense; rather, they were thought necessary by Mr. Yost to enable him to make gifts to his daughter

---

[2] There was also a Third Party Claim by Mr. Carroll against his former wife, Anne Yost. [Dkt. #77].

and her then husband without having to comply with what Mr. Yost said were federal gift tax requirements. The Amended Pleading charged that Mr. Yost's plan was expressly designed to make it appear that the large transfers of money were "loans," not gifts. [*See* Amended Affirmative Defenses, Dkt. #77, ¶¶ 1, 8, 14, 20, 24, 32, 40, 42, 47, 50, 51, 56].[3] *See also* Amended Counterclaim and Third Party Claim and the Exhibits accompanying them. According to Mr. Carroll's Amended Pleading, the "notes" were thought by Mr. Yost to be necessary to make the transfers appear to be loans so that gift taxes would not have to be paid by Mr. Yost. [Dkt. #77 at ¶ 47]. *See also* n. 2, *supra.* It is also alleged that the "notes" were also to serve as a device to help keep track of the money given to Mr. Yost's daughters.

The Amended Pleading charges that Mr. Yost expressly promised that "he would never enforce the notes," which, according to Mr. Carroll's Amended Pleading, Mr. Yost said would be "forgiven" at the time of his death. *See, e.g.,* Exhibits 5, 7 and 9 to the Amended Pleadings. [Dkt. #77].[4]

---

[3] In his Memorandum in support of his Motion to Dismiss the Amended Affirmative Defenses and Counterclaim [Dkt. #80], Mr. Yost notes that Mr. Carroll has not filed an Amended Answer. [Dkt. #80 at 1, n. 1]. While an Amended Answer, where necessary, is contemplated by the Federal Rules of Civil Procedure, *see* Rules 7(a)(2); 8(b)(1)(B), Mr. Yost was not ordered to file an Amended Answer – only to file Amended Affirmative Defenses and Counterclaim. In fact, the plaintiff's motion to dismiss never asked that the Answer be stricken. [Dkt. #36].

[4] Attached to the Amended Pleading as exhibits are what are alleged to be emails from Mr. Yost to his daughter, Anne, and her then husband, Mr. Carroll, that stated in part:

> "To refresh your memory, on April 30, 2009, you each signed two promissory notes (copy attached), one for $1,500,000 and one for $500,000, both due April 30, 2014.
>
> The intent was to roll the accrued annual interest of 4% into new notes of similar duration *so that no gift taxes would be incurred*. It also was the intent then, and the intent now, that the note(s) will be forgiven at my

(continued...)

3

In support of the overall theme of the Amended Pleadings that the supposed "loans" were fictive and part of a scheme to gull the IRS, the Amended Pleadings asserted that when Anne applied for a loan with Chase Bank, she never mentioned the "notes" in the application to bank officials. The Amended Pleading asserts that either Anne was attempting to defraud the bank by withholding critical information about her financial obligations or, as the plaintiff allegedly wrote to his daughter and the defendant, the "notes" were not true promissory notes and were never to be collected on.

---

[4](...continued)
> *death*, at which time there will be a "true up" with Lauren and Jeannie as we discussed at our 2013 family meeting."

[Dkt. #77, Exhibit 5](parenthesis in original)(emphasis supplied)

Exhibit 7 was another email again purportedly from Mr. Yost stating in part:

> The notes were due on April 30, 2014, and incurred simply interest of 4% annum, deferred until the note was due. *It was necessary to have notarized note to prove to the IRS that the money was not a gift, subject to a gift tax of 45%, but was, in fact, a legitimate interest bearing loan*. While the 4% rate is debatable, it is also defensible. It was never my intent to collect the interest in cash, but rather roll the interest over into a new note in April 2014. *The notes, you will recall, were to keep things "even" among the sisters, with the final "settlement" of the notes with all daughters occurring at my death, with the daughters with the smallest notes outstanding getting the difference in cash.*

[Dkt. #77, Exhibit 7](emphasis supplied).

Exhibit 9 purports to be yet another email from Mr. Yost stating in part:

> In the unlikely event of my untimely death before the completion of the Sedgwick project, the amount of $4,000,000 (the final maximum anticipated outstanding principal balance) plus interest will be used for daughter real estate parity calculations.
>
> *This all sounds pretty cold and financial, but is essential so that the money provided is NOT considered a gift, taxable at 40%.*

[Dkt. #77, Exhibit 9](capitalization and parentheses in original)(emphasis supplied).

Rather, the Amended Pleading asserts, that in addition to being necessary to evade gift tax requirements, the "notes" were also a means of keeping financial track of things to aid his daughters, if necessary, at the time of Mr. Yost's death. *See* n. 4. Hence, according to the Amended Pleading, given the ultimate purposes of the "notes," the application for a bank loan would not and did not contain any reference to what are now alleged by Mr. Yost to be outstanding "loans."

The plaintiff has again moved to dismiss – this time the motion is directed to the Amended Affirmative Defenses and Counterclaim – for failure to state a claim on which relief can be granted. [Dkt. #79]. *See* Rule 12(b)(6). The parties do not dispute the general requirements necessary to state a claim for relief. To survive a motion to dismiss, a Complaint, defense, or counterclaim must "contain sufficient factual matter, *accepted as true*, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S.662, 678 (2009)(emphasis supplied); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* A court looks to the facts alleged in the challenged pleading and to any appropriate exhibits when deciding a motion to dismiss. All *reasonable* inferences are to be drawn in favor of the nonmovant. *See generally* Iain Johnston, *The Case for Drawing Reasonable—and Only Reasonable—Factual Inferences in Analyzing Rule 12(b)(6) Motions to Dismiss*, 30 The Circuit Rider, (the Journal of the Seventh Circuit Bar Association), 14 (2022). Constrained by these principles, the question of the truth or falsity of Mr. Carroll's allegations do not enter into any assessment of the plaintiff's Motion to Dismiss the Amended Pleading.

**ARGUMENT**

**A.**

Mr. Carroll's Amended Pleading contains two related elements. First, it charges that the plaintiff gave large cash gifts to his daughter and her then husband, Mr. Carroll, and purposefully sought to make it appear they were "loans" in order to deceive the IRS and evade the payment of federal gift taxes, as well as to more easily allow his daughters to tally things up upon Mr. Yost's death. It was allegedly promised by Mr. Yost that no claim would ever be made on the "notes," which were not to be repaid, according to statements attributed to Mr. Yost by the Amended Pleading. These allegations are not implausible, as that term is used in determining the adequacy of pleadings. In fact, the practice of disguising gifts to relatives and friends as loans is not new. On the contrary, courts have, for years, been faced with such issues. *See, e.g., Putnam v. CIR.*, 352 U.S. 82, 91 (1956); *Est. of Maxwell v. Comm'r*, 3 F.3d 591, 597 (2nd Cir. 1993)("After carefully considering the record, we think that the notes executed by the daughters were not intended to be enforced and were not intended as consideration for the transfer by the petitioner, and that, in substance, the transfer of the property was by gift."); *Storey v. Storey*, 214 F. 973 (7th Cir. 1914); *Drapkin v. Mjalli*, 441 F.Supp.3d 145 (M.D.N.C. 2020)(Claimed debtor allowed to show that purported $1 million loan was really a gift, and that the promissory note was a "sham."); *In re: Ledstrom*, 2017 WL 1239144 at *4 (D.Nev.2017)(certain transactions amongst family members were structured in ways that did not necessarily correspond to how things functioned in reality); *In re Kraus*, 386 BR. 785, 835 (D.Kan. 2008); *Martin v. Commissioner of Internal Revenue*, 1969 WL 1635 (Tax Court 1969). *See also* Howard M. Zaritskyal, *Tax Court Reviews What Constitutes a Real Loan*, 38 Estate Planning 47 (2011)("Many relevant factors [go into] determining whether a loan is a bonafide extension of

6

credit or really a disguised gift. ... The distinguishing characteristic of a loan is the intention of the parties that the money advanced be repaid."); *Est. of Buring v. Comm'r*, 51 T.C.M. (CCH) 113 (T.C. 1985)("Where, however, the evidence suggests that a purported loan is a disguised gift and the taxpayer's attempt to camouflage his actions indicates an intentional or conscious failure, or a reckless indifference to the duty to file a return, we will not hesitate to uphold the Commissioner's determination of the section 6651(a)(1) addition to tax."). *See also* 6B Part 1, Anderson UCC, § 3-110: 17 [rev.] (3rd ed.).[5]

The common law has long recognized the defense that precludes a plaintiff from prevailing in a suit against a defendant when the two have acted *in pari delicto – i.e.* that is, when the plaintiff and defendant share equal or mutual fault in the very transaction at issue. *See, e.g., Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306–07 (1985). *See also* 1 J. Story, Equity Jurisprudence 304–305 (13th ed. 1886).[6] *McMullen v. Hoffman,* 174 U.S. 639, 654 (1899) explained the doctrine this way:

> 'The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract.

\* \* \*

---

[5] The term "disguise" is frequently employed by courts in cases where a "gift" is claimed to be a "loan."

[6] The very name of the long standing doctrine presupposes that both parties are equally at fault. Thus, the plaintiff's contention that the doctrine could not apply here because Mr. Carroll's Amended Pleading has admitted his own culpability in the alleged scheme by executing the purported "notes" is a non-starter. Indeed, the phrase *in pari delicto* means of equal fault. Here, the theoretical "fault" of Mr. Carroll is his (and his then wife's) execution of the "notes," which was thought essential by Mr. Yost.

7

> 'The court refuses to enforce such a contract and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defence is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law.'
>
> When illegality has been found to exist,... the courts will not allow damages to be recovered for an alleged breach of the illegal agreement. ... '[T]he law will leave the parties as it finds them.' *Id.,* at 670.

In *Coudert v. Hokin*, 2017 WL 10221323, at *3 (S.D.N.Y. 2017), the court permitted a counterclaim that charged that the loan instruments that formed the basis of the claim were executed by the parties to evade tax liability, noting that the case "implicate[d] the doctrine of *in pari delicto*." The court rejected the argument that parol evidence would be necessary to determine whether the writing was a contract or a "tax evasion scheme" where the parties to the transaction are also the litigants in the case before the court. 2017 WL 10221323 at *3. The court adverted to a number of cases in which summary judgment was *denied* because the question existed as to whether a "note" was a "'sham transaction'" – that is, while the "note" was valid on its face, it "was never intended [by the parties] to take effect." The court held that the intent of the parties in issuing the notes was a question for the trier of fact, and parol evidence – not normally admissible under New York law to vary the terms of a written agreement – would be admissible at trial to show whether the parties intended the loan instrument to be a binding debt. What the court said in *Coudert, supra* is significant here:

>Plaintiff argues that Defendant's counterclaim is unenforceable as a matter of law because the claim relies on void loan instruments. ... According to Plaintiff, the loan instruments that Defendant submitted were only executed by the parties to avoid tax liability which implicates the doctrine of *in pari delicto. Id.* Defendant responds that the loan instruments are fully executed documents not susceptible to parol evidence, therefore the Court should disregard any allegations of a tax evasion scheme.
>
>\* \* \*
>
>"Nevertheless, parol evidence may be offered to show that a writing, although purporting to be a contract, is, in fact, no contract at all. ..." New York Courts have permitted parol evidence to determine whether the writing is in fact a contract or tax evasion scheme where the parties to the initial loan transaction are identical litigants before the Court,...*The intent of the parties in issuing the notes is an issue for the trier of fact and parol evidence would be admissible at trial to show whether the parties intended the loan instrument to be a binding debt.*

2017 WL 10221323, at *3 (emphasis supplied). *See also Cohen v. Cohen*, 943 N.Y.S.2d 790 (2012), *aff'd*, 114 N.Y.S.3d 684 (2020).

These principles have long applied in Illinois. *See, e.g., Bishop v. American Preservers Co.*, 157 Ill. 284, 315, 41 N.E. 765, 775 (1895)("where parties to an illegal agreement are in pari delicto, the law will not aid either, but will leave them without remedy against each other"); *Lamb v. Tomlinson*, 261 Ill. 388, 391, 103 N.E. 1058, 1059 (1914)(courts "close their doors against parties engaged in illegal and immoral transactions seeking to recover from their confederates profits which have been gained"). *See also Vine St. Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 297, 856 N.E.2d 422, 436 (2006)("the law will not aid either party to an illegal act, but will leave them without a remedy as against each other"); *O'Hara v. Ahlgren, Blumenfeld & Kempster,* 127 Ill.2d 333, 348, 537 N.E.2d 730 (1989).

In *Shanahan v. Schindler*, 63 Ill.App.3d 82, 379 N.E.2d 1307 (1st Dist. 1978) [Dkt. #99 at 4; Dkt. # 102 at 2] cited by both the plaintiff and the defendant in this case, [Dkt. #99 at 4, Dkt. #102

9

at 2], the plaintiff sued to recover the amount remaining unpaid on a promissory note that replaced a note executed in connection with the sale of stock. The trial court concluded that the evidence did not support a finding that the transaction involved an unlawful purpose consisting of attempting to evade taxes and deceive the Internal Revenue Service by having the maker of the note act as a secret strawman. But it did not suggest that evidence in that regard was improperly received, only that it was insufficient. Significantly, the Appellate Court *upheld* the finding of the trial court that the "note" was not enforceable because the "payee" – here, Mr. Yost – had induced the maker – Mr. Carroll (and his wife) – to enter into the transaction by promising "that he would not be held liable on the note." *Id.* at 1315 – the very thing contended in this case by Mr. Carroll's Amended Pleading. Finally, the Appellate Court affirmed the trial court's finding that the parol evidence rule did not bar admission of the purported maker's testimony concerning a promise to him by the claimed holder of the note that he would not be held liable – precisely the situation that is alleged by the Amended Pleading here. The Appellate Court reaffirmed the rule that "a contract designed to accomplish an unlawful purpose is illegal and void, and the court will aid neither party in its enforcement." 63 Ill.3d at 91, 379 N.E.2d at 1314.

  More recently in *King v. First Capital Fin. Svc's Corp.*, 215 Ill.2d 1, 828 N.E.2d 1155, 1173 (2005) the Illinois Supreme Court explained: "The doctrine of *in pari delicto* embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *See also In re Wolf*, 595 B.R. 735, 785 (Bank. N.D.Ill. 2018); *Signapori v. Jagaria*, 2017 Ill.App. 160937 (1st Dist.2017) ("'Generally, where the parties to a contract against public policy are in pari delicto, or equally at fault, a court will not aid either party but will leave both parties where it finds them;'... 'this rule is designed not to help any party but rather to protect the

public.'"). The doctrine continues unabated in Illinois. *See, e.g., Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*, 2019 WL 3889626 (N.D. Ill. 2019)(and cases cited)(Feinerman, J.); *In re Equipment Acquisition Res., Inc.,* 502 B.R. 784, 792 (N.D.Ill. 2013)(collecting numerous cases applying the *in pari delicto* doctrine in Illinois). Little wonder that the Seventh Circuit in *Peterson v. McGladrey LLP*, 792 F.3d 785, 788-89 (7th Cir. 2015) said: "As far as we can tell, Illinois regularly disallows litigation between one wrongdoer... and another ... whose act may have added to the loss or failed to reduce it."

Judge Feinerman's analysis in *FirstMerit Bank, N.A. v. Quanstrom-Rose L.L.C.*, 2013 WL 6577028, at *2 (N.D. Ill. 2013), is instructive:

> Defendants' affirmative defense to the breach of promissory note claim to invoke the *in pari delicto* doctrine, which is equivalent in all pertinent respects to unclean hands and which indisputably applies to actions at law. *See Schlueter v. Latek,* 683 F.3d 350, 355 (7th Cir. 2012) ("When as in such cases the plaintiff is asking for equitable relief, the *in pari delicto* defense is referred to as the unclean-hands defense. But the label doesn't matter, and the defenses were equated in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 360–61 (1995).")(citation omitted); *Pieczynzki v. Duffy,* 875 F.2d 1331, 1333 (7th Cir. 1989) ("To that extent ... there is a defense of 'unclean hands' (if equitable relief is sought) or '*in pari delicto*' (if legal relief is sought).").[Parentheses in original].[7]

More recently Judge Feinerman returned to this theme in *Weifang Tengyi Jewelry Trading Co. v. Intuii LLC*, 2019 WL 3889626 (N.D. Ill. 2019) where he said:

> Next, Weifang moves to strike Intuii's affirmative defense of unclean hands—or, to be precise, in pari delicto, *see Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012) (noting that unclean hands and *in pari delicto* are equivalent defenses, except that the former is a defense to equitable relief while the latter is a defense to remedies at law)—on the ground that Weifang's alleged misconduct did not give rise to its right

---

[7] *See also Al Haj v. Pfizer, Inc.*, 2020 WL 1330367 at n. 4 (N.D.Ill. 2020)(Feinerman, J.). *Cf. Wooley v. Jackson Hewitt, Inc.,* 2011 WL 1559330, at *1 (N.D. Ill. 2011)(since class representatives were sophisticated, willing, and at least equal participants in the misconduct they were subject to an *in pari delicto* defense). *See also* 5 Williston on Contracts § 12:1 (4th ed.).

to enforce its trademark. Weifang is correct.

> "The doctrine of 'unclean hands' [and, by extension, in pari delicto] ... means that ... relief will be refused if it would give the plaintiff a wrongful gain." *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). "Properly applied, the [defense] ... prevent[s] 'a wrongdoer from enjoying the fruits of his transgression.' " *Packers Trading Co. v. CFTC*, 972 F.2d 144, 149 (7th Cir. 1992)...*Jackson v. Bd. of Election Comm'rs*, 975 N.E.2d 583, 590 (Ill. 2012) ("[The doctrine] is based on the principle that litigants should not be permitted to enlist the aid of a court of equity to further their fraudulent or unlawful purposes or take advantage of their own wrongdoing."). Significantly for present purposes, the doctrine applies only "to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief.*"

(Parentheses, quotations, and emphasis in original). *See also Bartle v. Nutt,* 29 U.S. 184 (1830).

Here, Mr. Carroll's Amended Pleading alleges that Mr. Yost expressly stated that the promissory "notes" were essential to avoiding tax liability and were never intended by him, his daughter, and Mr. Carroll to be "notes" at all. Mr. Carroll and his wife had, at that point, an option: decline the money and refuse to become involved in the alleged scheme of Mr. Yost or enable the alleged scheme to proceed by executing documents that would purport to be but were not "promissory notes." Given the allegations in the Amended Pleading, Mr. and Mrs. Carroll chose to proceed with the alleged subterfuge and executed the "notes." Thus, any claim that the events *alleged* in the Amended Pleading do not implicate the *in pari delicto* doctrine is, at least at this juncture, contrary to the events alleged in the Amended Pleading and would put out of view more than a century of Illinois and federal decisions. *See also* discussion in Defendant's Response in Opposition to Plaintiff's Motion to Dismiss at 3-4. [Dkt. #99].[8]

---

[8] While all that we have said would not apply if the plaintiff were a holder in due course, there is no claim made here, nor could there be, that Mr. Yost occupies that status under the Amended Pleading. *See* Defendant's Response to Plaintiff's Motion to Dismiss. [Dkt. #99 at 4].

**B.**

The plaintiff's Motion to Dismiss the Amended Pleading contends that the underlying validity of tax motivated transactions which he insists is involved in this case is not a proper basis on which a private contract dispute can be resolved, and therefore Mr. Carroll's Amended Pleading, must be dismissed. The plaintiff relies on the following two lines from Judge Posner's panel Opinion in the ERISA case of *Licciardi v. Kropp Forge Div. Employees' Retirement Plan*, 990 F.2d 979 (7th Cir. 1993) – a case which did not pretend to deal with issues comparable to those presented in this case. In *Licciardi*, almost as an aside, Judge Posner said:

> "[C]ontract cases should not be complicated by collateral inquiries into the validity of tax-motivated transactions. The line between permissible tax avoidance and forbidden tax evasion is too fine to be made the fulcrum for resolving a private contract dispute." *Id*. at 984.

(Brackets and capitalization in Plaintiff's rendition of the quotation) [Dkt. #80 at 5].

Putting to one side the significant fact that the present case is not an ERISA case and does not present the issues that confronted the court in *Licciardi,* it must not be forgotten that "general propositions do not decide concrete cases."*Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). The plaintiff's reliance on the snippet from *Licciardi* is contrary to Judge Posner's repeatedly expressed philosophy, which recoiled against quotations seized upon and repeated "out of context," *Wisconsin Bell v. Bie*, 340 F.3d 441, 447 (7th Cir. 2003), lest they gain a significance never intended by the author or warranted by the factual setting in which the quotation appears. To do so, Judge Posner said time and again, makes language a "trap rather than a mode of communication." *State of Illinois ex rel Hartigan v. Panhandle E. Pipeline Co.*, 852 F.2d 891, 893 (7th Cir. 1988). A few examples of Judge Posner's aversion to reliance on snippets of an opinion

13

taken out of context – as has been done here – are collected in the note below.[9] And that aversion was not peculiar to him. On the contrary, the technique has been criticized repeatedly by all courts which have stressed the critical significance context plays in according meaning. *All Tech Telecomm v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999)("such statements can be misleading if carelessly lifted from the case-specific context in which they were originally uttered.").[10]

Nor does the present case deal with some "collateral inquir[y]" into the *validity* of "tax-motivated transactions" or the *validity* of Mr. Yost's alleged belief that the "notes" were necessary so that gift taxes to the IRS would not have to be paid on the transfers to his daughter and Mr. Carroll. Whether Mr. Yost's announced – or at least apparent – belief on this score was correct will be of no moment in this case. The trier of fact ultimately will be tasked with determining whether the statements and promises attributed to Mr. Yost by the Amended Pleading were in fact made – not with whether Mr. Yost's alleged legal assessment under the tax laws was right or wrong. The "fulcrum" on which the case will pivot will be whether Mr. Yost said and did the things attributed

---

[9] *See, e.g., Samirah v. Holder*, 627 F.3d 652, 660 (7th Cir. 2010)("Moreover, it is important in interpreting judicial opinions, as in interpreting other documents, to read words in context."); *Vendetti v. Compass Environmental, Inc.*, 559 F.3d 731, 733 (7th Cir. 2009)(It "is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context."); *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1021 (7th Cir. 2006); *Wisconsin Bell v. Bie*, 340 F.3d 441, 447 (7th Cir. 2003)("This result is reached, however, by seizing upon a quotation from *Gade* and using it out of context."); *Nw. Nat. Ins. Co. v. Maggio*, 976 F.2d 320, 323 (7th Cir. 1992)("Judicial opinions are frequently drafted in haste, with imperfect foresight, and without due regard for the possibility that words or phrases or sentences may be taken out of context and treated as doctrines. We shouldn't like this done to our opinions and are therefore reluctant to do it to the opinions of other courts."); *State of Ill. ex rel. Hartigan v. Panhandle E. Pipe Line Co.*, 852 F.2d 891, 893 (7th Cir. 1988)("We do a disservice to the Court by wrenching its words out of context and giving them a talismanic significance; we make language a trap rather than a mode of communication.").

[10] *See, e.g., Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 322 (1985); *City of Chicago ex rel Rosenberg v. Redflex Traffic Systems, Inc*., 884 F.3d 798 (7th Cir. 2018); *Cox v. CFTC*, 138 F.3d 268, 275 (7th Cir. 1988); *United States v. Pacelli*, 491 F.2d 1108, 1120 (2nd Cir. 1974).

to him by the Amended Pleading, and not on the legal accuracy of his alleged conclusion that "notes" were necessary to avoid the payment of gift taxes in connection with the transfers of money to the defendant and his wife. The line between permissible tax avoidance and forbidden tax evasion will not even be an issue in the case.

Suppose, for example, Mr. Yost were to adduce evidence that he was advised that the "notes" were not necessary to avoid gift taxes under the circumstances presented here. The "fulcrum" of decision would still not turn on the accuracy of the hypothetical advice, but on whether Mr. Yost said and did what the Amended Pleading alleges. Even evidence of receipt of outside advice would only go to the question of whether, given that advice, Mr. Yost would have nonetheless insisted on camouflaging as loans what are claimed by Mr. Carroll to have been gifts. The question, it bears repeating, would still be whether Mr. Yost, perhaps because of disbelief or uncertainty of whether the hypothetical advice was correct or not, did and said what the Amended Pleading claims because he wanted a hedge again possible inaccuracy or uncertainty. In short, the carefully excised statement from *Licciardi* will have nothing to do with whether Mr. Yost devised and implemented the scheme *alleged* in the Amended Pleading.

But there are other aspects of *Licciardi* which *are* significant here. *Licciardi* cited approvingly *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067–71 (7th Cir. 1992) – which was also authored by Judge Posner. *See* 990 F.2d at 984. In *Herzog*, the court *approvingly* cited Learned Hand's classic statement in *In re H. Hicks & Son, Inc.,* 82 F.2d 277, 279 (2d Cir.1936): "It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others." That is precisely what is charged in Mr. Carroll's

Amended Pleading.

While acknowledging that some courts have refused to permit parol evidence to show that a "purported contract" was a disguise of some sort – in short, a "sham" – Judge Posner's opinion for the court in *Herzog* stressed that the Seventh Circuit preferred the opposite view, and that a defendant *was* entitled to present evidence supporting his claim that the promissory "notes" were never intended to be presented for payment. That is precisely the situation alleged by Mr. Carroll's Amended Pleading. As Judge Posner emphasized in *Herzog*, given the procedural posture of the case, "we must assume the claim is true," and thus the district court *erred* in concluding the notes were enforceable regardless of what the parties actually intended as manifested by their contemporaneous words and deeds.

Judge Posner also went on to cite approvingly the Seventh Circuit's earlier decision in *Nice Ball Bearing Company v. Bearing Jobbers, Inc.*, 205 F.2d 841 (7th Cir. 1953), where the court held it is clear that a party *can* show that while the parties had executed an instrument purporting to be a written contract, they did not at the time of its execution intend it to be a contract "and that it, therefore, was not a contract and placed neither party under any legal obligation." *Id.* at 845. *See also Van Norman v. Young*, 129 Ill.App. 542 (1st Dist. 1906), *aff'd,* 228 Ill. 425, 81 N.E. 1060 (1907)(plaintiff's oral evidence showing that a written contract relied upon by the defendant was never intended to be a binding valid contract, but was signed solely for the purpose of procuring a bank loan, was properly admitted); *Jost v. Cornelius*, 334 Ill.App. 279, 79 N.E.2d 310 (1948)(oral evidence showing that a written contract was never intended to be binding was properly admitted); *Robinson v. Nessel*, 86 Ill.App. 212 (1899)(trial judge erred in excluding evidence that tended to show that the alleged contract was never intended to be operative between the parties, and that "its

sole and only purpose was to overcome certain objections of the Bricklayers' Union; that it was not to be acted upon by the parties to it, and that in truth and in fact the real contract under which appellee worked for appellant was an oral agreement, by which appellee was to be and was paid by the day a higher rate of wages than that provided by the written agreement, but the hiring was by the day.").

It is significant that the opinion in *Nice Ball Bearing* observed that "[t]he courts of Illinois have recognized this as being the true rule." *Id*. at 846. Thus, the Court held that the "'contract' [at issue] was a sham and was never intended by the parties to be their contract...." 205 F.2d at 850. *See also Anderson v. Liles*, 774 F.Supp.2d 902, 908 (N.D.Ill 2011)(Gottschall, J.). That is precisely what is *alleged* in this case by Mr. Carroll's Amended Pleading.[11] *See also United States v. Aetna Casualty & Survival Co.*, 480 F.2d 1095, 1099 (8th Cir. 1973)(citing *Nice Ball Bearing Company* and holding that parol evidence admissible to show that apparent agreement was a "scam."); *Great Western Cities, Inc. v. Binstein*, 476 F.Supp. 827, 832 (N.D.Ill. 1979); *Champion v. Lillegren*, 411 N.W.2d 426, 428 (Wis.App. 1987). *See also* 71 A.L.R.2d 382 (1960)(admissibility of oral evidence to show that a writing was a sham agreement not intended to create legal relations).

In sum, *Herzog*'s insight bears repeating:

> "[a]t all events, to allow parol evidence to expose a sham case such as this is alleged to be would make no greater inroads into the parol evidence rule than the cases on conditions precedent do. McGowen is not trying to change the terms in the promissory notes, but to show that the notes were not in fact intended to create a legally enforceable obligation. They were, not to put too fine a point on it, intended to fool the Internal Revenue Service. Herzog, perhaps fearing that it will be found to have been a party to this little deception, does not argue that McGowen's unclean hands should forfeit its right to make a sham-transaction defense, if there is such a

---

[11] *See also* Defendant's Response in Opposition to Plaintiff's Motion to Dismiss Defendant's Amended Affirmative Defenses and Counterclaim. [Dkt. #99 at 6, discussing *Nice Ball Bearing Co.*].

defense, and we think there should be because we can think of no principled distinction between it and the condition-precedent defense that Herzog concedes is valid."

976 F.2d at 1071.[12]

## C.

In *Licciardi*, Judge Posner observed that if there was any fraud on the Internal Revenue Service, *Licciardi* was an eager participant and should not benefit from it. Here the Amended Pleading, in substance, though not in words, charges that the plaintiff was not only "an eager participant" in the tax scheme – he *is* charged with having devised it – and thus, the Amended Pleading contends, in essence, that Mr. Carroll "should not benefit from it."

Finally, it should be noted that the snippet from *Licciardi* on which the plaintiff relies has only been, according to a Westlaw search, cited in *one* case and then in the last sentence of the opinion, almost as an afterthought. *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 532 (7th Cir. 2018). If the two sentences from *Licciardi* on which the plaintiff has relied had the significance and meaning sought to be attributed to them by the plaintiff's brief, one might have expected them to have received far wider currency and usage than the single line at the end of an Opinion, which, like *Licciardi,* itself, did not deal with the issue posed by the instant case. *Id*. at 532.

---

[12] As Judge Posner stressed in *Herzog*, "[p]arol evidence is always admissible to prove a fraud." 976 F.2d 1062, 1071. And the *Herzog* opinion noted: "McGowan does not contend that when Herzog agreed to the scheme for making the prepayment of the purchase installment look like a loan, it intended to double-cross McGowan by demanding payment of the note. If there was a fraud, it was against the Internal Revenue Service, though no one is arguing this." But that is precisely what the Amended Pleading contends happened here.

**D.**

Finally, the objection that the Amended Pleading fails to state a claim because it did not itemize or specify the federal tax statutes that are claimed to be implicated is not persuasive. The argument appears to be based on Illinois *pleading* rules which do not govern federal cases. Second, a simple inquiry from the plaintiff by way of an interrogatory would have provided the information now claimed to have been missing. In any event, the statutes claimed to have been violated are now listed in footnote 1 of the defendant's response brief.[13]

**CONCLUSION**

With all deference, we think that the plaintiff's briefs have misapprehended the central question involved in this case at this stage of the proceedings. We are not concerned at this juncture with the *truthfulness* of Mr. Carroll's allegations – only with whether under the well-accepted pleading standards in the federal courts Mr. Carroll's Amended Pleading has stated a viable defense

---

[13] Footnote 1 of Mr. Carroll's Response brief spells out in detail the statutes allegedly violated in this case. The brief states:

> Tax evasion is the failure to pay or deliberate underpayment of taxes. Internal Revenue Manual Part 25.1.1.4. Special Topics, Avoidance v. Evasion, https://www.irs.gov/irm/part25/irm_25-001-001#idm140486824974640. "Evasion involves some affirmative act to evade or defeat a tax, or payment of tax. Examples of affirmative acts are deceit, subterfuge, camouflage, concealment, attempts to color or obscure events, or make things seem other than they are." Id. "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution." 26 U.S. Code §7201.The intentional disguising a gift as a loan in order to avoid gift taxes is illegal tax evasion. 26 U.S. Code §2501, §2511, and §7201. "Whether the transfer of property is a [bona fide transfer] or a gift depends upon whether, as part of a prearranged or preconceived plan, the donor intended to forgive the not es that were received at the time of the transfer. *Deal v. Commissioner*, 29 T.C. 730, 736 (1958). In *Deal*, the court found that the notes executed by the daughters were not intended to be enforced and were not intended as consideration for the transfer and, rather than a bona fide [transfer], the petitioner had made a gift of the remainder interest to her daughters. *Id.*

or claim. *See* Rule 12(b)(6), Federal Rules of Civil Procedure. Assuming as we must, the truth of the well-pled factual allegations in the Amended Pleading, the Motion to Dismiss is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/2/22