IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R. DAVID YOST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 5393 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MORGAN CARROLL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Shortly after the plaintiff's daughter and the defendant, Morgan Carroll, became embroiled in divorce proceedings in the Illinois state court in mid June, 2020, the plaintiff brought this action against Mr. Carroll in the United States District Court for the Northern District of Illinois. The federal case seeks to collect millions of dollars from Mr. Carroll pursuant to what the Complaint alleges are "loans" evidenced by "promissory notes" signed by the defendant and his then wife – who is also the plaintiff's daughter – in connection with substantial transfers of money to the then married couple. The defendant's Amended Pleading [Dkt. #77] alleges that the "promissory notes" are a sham, given pursuant to a scheme crafted by the plaintiff to avoid having to pay gift taxes on the large transfers of money.[1] It is also contended by the defendant that the plaintiff explicitly promised that he would never seek to collect on the "notes." The history of this case is recounted in greater detail in *Yost v. Carroll*, 2022 WL 888945 (N. D. Ill 2022) and *Yost v. Carroll*, 2022 WL 3043079 (N.D. Ill. 2022).

---

[1] Part of the total that is claimed by the plaintiff to be due under the "notes," consists – according to the defendant – of certain monies given to the plaintiff's daughter before she and Mr. Carroll were married.

The present controversy involves a motion by the Plaintiff for a Protective Order striking a deposition subpoena from the Defendant to Charles Harris, who is a tax and estate planning partner in Katten, Muchin, Rosenman, LLP, which also happens to be plaintiff's counsel in the instant case.[2] Mr. Harris coincidentally is a friend of Ms. Alyssa Mogul, who is Mr. Carroll's attorney in the pending divorce proceedings in the state court. In August 2020 – in connection with those divorce proceedings – and prior to the commencement of the present federal action on September 11, 2020, [Dkt. #1] – Ms. Mogul called Mr. Harris to discuss an issue relating to certain claimed "promissory notes" involved in the divorce case. As it turns out, these are the same "notes" that are involved in the present litigation. Although Mr. Carroll first said he was on the line during the call, he later said he was not.

It is contended by Mr. Carroll that he wanted to engage Mr. Harris as a testifying expert regarding the legitimacy of the "notes." [Dkt. #123 at 3]. *See also* [Dkt. #121, ¶¶ 2, 6, 7]. Significantly, however, Mr. Carroll conceded at his deposition that he did not "retain" Mr. Harris either during or after the call between Mr. Harris and Ms. Mogul. [Dkt. #121-3; Deposition of Morgan Carroll at 137-138]. Mr. Carroll also conceded that he did not elicit or receive any legal advice from Mr. Harris, although it is contended that after the phone call Mr. Harris conducted some "research" on the issue of the "notes" and forwarded some materials to Ms. Mogul. [Dkt. #123 at 3].[3] However, Mr. Carroll has chosen not to provide the court with that "research" or to explain what

---

[2] The subpoena was served in late February; yet the Motion for Protective Order did not come until three months later, hours before the then close of fact discovery. Deadline-day discovery motions are rarely proper and often not well received. *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 647 (7th Cir. 2001); *Summy-Long v. Pennsylvania State Univ.*, 715 F. App'x 179, 184 (3d Cir. 2017). However, the timing of the Motion may have been attributable to the timing of the court's earlier opinion.

[3] The defendant and Ms. Mogul obviously have whatever materials were sent to Mr. Mogul by Mr. Harris, and no deposition is needed to learn what materials were sent by Mr. Harris.

it may have consisted of. In any event, Mr. Harris was not retained, and the Katten Muchin Firm was retained by Mr. Yost to represent him in the instant case.

Plaintiff's counsel has represented that the Katten, Muchin Firm has erected what it calls an "ethical wall" isolating Mr. Harris from receiving or making any communications relating to this case or to his telephone conversation with Ms. Mogul or to any materials that may have been sent to her following the telephone calls she made to Mr. Harris. [Dkt. #121, ¶3]. There appears to be no contention that the representation is inaccurate or that a deposition of Mr. Harris is needed in order to examine him about the "ethical wall."

Mr. Harris' deposition and document production were supposed to take place on April 4th. They did not. As noted earlier, perhaps the responsibility for the timing of the plaintiff's present Motion for a Protective Order can be linked to the timing of the court's ruling on the second motion to dismiss the defendant's counterclaim. [Dkt. #121, ¶14; Dkt. #121-4]. But, regardless, Mr. Yost remained of the opinion that allowing Mr. Harris to be deposed by the defendant would not be proper for reasons that were discussed between counsel. [Dkt. #121-4]. Plaintiff's counsel asserts that there are no responsive documents to produce as a result of the "ethical wall" that has been erected. [Dkt. #121, ¶ 5]. She has also represented that the only potentially responsive documents involved in this narrow aspect of things might be the emails Mr. Harris sent to Ms. Mogul in August 2020, which, in any event, the defendant undeniably has in his possession. However, Mr. Carroll claimed privilege as to those communications at *his* deposition, and he included them in a January 2020 privilege log as well. [Dkt. #121, ¶ 7]. Two days after Mr. Carroll's deposition, however, he withdrew his claim of privilege. [Dkt. #121, ¶ 8]. Plaintiff's counsel asked for a written description of the specific scope of the defendant's "waiver," which Mr. Carroll's counsel assured would be

3

forthcoming, but apparently has not yet been provided. In any event, Mr. Yost insists that there is no basis to require Mr. Harris's deposition and has moved for a Protective Order prohibiting it. [Dkt. #121, ¶¶ 10, 12].[4]

The inescapable reality in this case is that any opinion Mr. Harris may have formed and/or expressed relating to the "notes" during his call from Ms. Mogul was necessarily preliminary and in any event cannot be used either against or for Mr. Carroll in this case. Under the hearsay rule, Ms. Mogul obviously would not be allowed to simply repeat what Mr. Harris may have said if offered for the truth of any matter asserted – even if it was a firm opinion, which the defense does not claim it was. *Cf., United States v. McGee,* 612 F.3d 627, 630-31 (7th Cir. 2010); *In re James Wilson Associates*, 965 F.2d 160, 172 – 73 (7th Cir. 1992)(Posner, J.). *See generally* Jeffrey Cole, *The Federal Hearsay Rule: You Can't Believe Everything You Hear*, LITIGATION, 51 (Spring 2008). Mr. Carroll has the "research" that was supposedly done by Mr. Harris and sent on to Ms. Mogul. He is free to make whatever *appropriate* use of it is permissible under the Federal Rules of Civil Procedure or Federal Rules of Evidence. He cannot, however, indirectly force Mr. Harris to, in effect, act as an expert for him through the gambit of a deposition. Involuntary servitude can take subtle forms. But it does not thereby become acceptable, regardless of the context. This is not to say that a potential expert can never be compelled to be deposed. He can be in the court's discretion under certain limited circumstances. *See* Judge Friendly's characteristically insightful opinion in *Kaufman v. Edelstein*, 529 F.2d 811, 822 (2nd Cir. 1976), which discusses a number of factors and considerations that a court is to evaluate in exercising its discretion whether to invalidate or approve an attempt to compel a non-consenting "expert" to testify at a deposition. *See also Blue Cross and*

---

[4] The fact that *Mr. Harris* has not filed a motion claiming oppression is not dispositive. The plaintiff's standing to bring the motion is not dependent on such a claim. See Rule 45 (d)(3).

*Blue Shield of Wisconsin v. Marshfield Clinic*, 152 F.2d 588, 595 (7th Cir. 1998); *Foshee v. Mastec Network Solution, Inc.*, 2021 WL 5529891 (E.D.Cal. 2021).[5] *See also* Rule 45(d)(3)(B)(ii) and 45(d)(3)(C)(i) which provide that instead of quashing or modifying a subpoena, a court may order appearance of the deponent if the serving party (i) "shows a substantial need for the testimony… that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed party will be reasonably compensated." Neither of those conditions has been satisfied by Mr. Carroll.

Thus, in this case, an appropriate exercise of discretion warrants, if it does not compel, the conclusion that Mr. Harris should not be forced to be deposed – and, in effect, be compelled to be an involuntary expert regarding matters pertaining to the "notes" – and that is what seems to be sought by the defendant's insistence that Mr. Harris be deposed. As things now stand, Mr. Harris will not be available in this case as a witness for any party under any circumstances, either as an expert or as an individual providing an opinion on which a future retained expert might try to base his opinion. Nor will he be permitted to testify as to anything he may have been told by Mr. Carroll's lawyer or by Mr. Carroll, if he was on the phone with Mr. Harris – which Mr. Carroll has apparently denied. Each side will have to get his own expert, and Mr. Harris cannot be among them, directly or indirectly. *Cf.*, *Morrison v. Quest Diagnostics, Inc.*, 315 F.R.D. 351, 357 (D. Nev. 2016) ("[T]he court has no authority to compel a witness to serve as an involuntary expert witness for a party, or to provide uncompensated expert opinions."). *See also* Fed. R. Civ. P. 45(d)(3)(B)(ii)(court may

---

[5] The Advisory Committee notes to Rule 45(c)(3)(B)(ii), relying on *Kaufman v. Edelstein* indicate that the district court's discretion should be informed by: (1) the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony, (2) the difference between testifying to a previously formed or expressed opinion and forming a new one, (3) the possibility that, for other reasons, the witness is a unique expert, (4) the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify, and (5) the degree to which the witness is able to show that he has been oppressed by having continually to testify. *See Brogren v. Pohlad*, 1994 WL 654917, at *2 (N.D. Ill., 1994).

quash subpoena that requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."); *Farlough v. Huskic*, 2017 WL 2872431, at *2 (W.D. Ky., 2017)("The court will not require a non-party to participate in the case as an involuntary, uncompensated expert."); *Schuster v. Aquila, Inc.*, 2008 WL 1884159, at *2 (D. Kan. 2008).

Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs for discovery. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014). A court may quash or modify a subpoena under Rule 45 if it subjects the recipient to "undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv), or if the subpoena requires the recipient to "disclos[e] an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). As noted earlier, the court may order appearance under specified conditions if the serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship[,]" and "ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(c). *See Cates v. Zeltiq Asethetics, Inc.*, 2020 WL 5517457, at *2 (D. Mass. 2020). A deposition of Mr. Harris under the circumstances presented on this record would serve no legitimate or compelling purpose and would not be in accord with the desiderata of the Federal Rules of Civil Procedure. Even in Ms. Mogul's estimate, Mr. Harris was never more than "a potential expert witness" in connection with the state court divorce action. [Dkt. #123 at 7].

It is no answer to insist, as does Mr. Carroll's brief in Opposition to the Motion for Protective Order, that Mr. Harris "unquestionably possesses information and opinions that are

6

relevant to Mr. Carroll's defense in this matter." [123 at 9]. Unfortunately, "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). *Accord Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018). Here, what that information is the defendant's brief does not say. It is beyond debate that Mr. Harris has no firsthand information about what may have occurred regarding the "notes." He only knows what he was told by Ms Mogul. And it is not conclusive to say that he has "opinions" that are "relevant to Mr. Carroll's defense in this matter. There are numerous people in this country who "unquestionably possess... opinions that are *relevant* to Mr. Carroll's defense in this matter." [Dkt. #123 at 9](Emphasis supplied). But that does not mean that they must sit for the deposition demanded by the defendant.

Here, as always, "'[r]ealities must dominate the judgment.'" *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 75, 774 (1984). The reality here certainly appears to be that Mr. Carroll's lawyers seek a deposition of Mr. Harris in the hope of making him a kind of involuntary expert in support of their legal theory regarding federal gift tax requirements. Mr. Carroll's assertion in his Response in Opposition to Plaintiff's Motion For a Protective Order [Dkt. #123] that Mr. Harris has information *relevant* to Mr. Carroll's defense does not answer the concerns and objections raised by the Motion for Protective Order. [Dkt. #123 at 9]. Anyone in Mr. Harris' field of expertise would have opinions "relevant" to the issues in this case. But that would not mean that they are appropriate candidates to be deposed on behalf of either of the parties in this case.

Apart from the fact that Mr. Carroll's brief in Opposition to the Plaintiff's Motion for Protective Order does not contend that Mr. Harris expressed any opinion, tentative or otherwise, relating to the underlying issues in this case, deposing him with a view towards having him provide a legal opinion that would, in effect, support the defendant's version of events would neither be appropriate nor in keeping with the applicable Federal Rules of Civil Procedure. There are any number of potential experts able to testify in support of the defendant's apparent legal theories in this case. But to try to force a member of the plaintiff's lawyer's Law Firm to be a witness is, in the present circumstances, inappropriate and improper.

As discussed in *Yost v. Carroll*, 2022 WL 3043079 (N.D. Ill., 2022), the cynosure of the case is whether the conversations and interchanges claimed by Mr. Carroll – and presumably denied by Mr. Yost – occurred. While an interpretation of the tax code and discussion of tax planning in accord with Mr. Carroll's apparent theory might have circumstantial relevance to the fact-finder's decision of whether Mr. Carroll's story is more likely true than not, the focus nonetheless will be on the parties' testimony regarding what was allegedly said by the parties in connection with the transfers of money. If Mr. Carroll wants to obtain a witness to support his theory of federal gift tax laws in tax planning he is free to retain such a person. He is not, however, under the circumstances here, entitled to require Mr. Harris to be an involuntary expert. There can be no claim here that there is a substantial need for the testimony of Mr. Harris that cannot be otherwise be easily bad met without imposing any undue hardship on the witness. *See* n. 5, *supra.*; *Carter–Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2nd Cir.1972); *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 304 F.R.D. 379, 382 (S.D.N.Y. 2015).

8

It is beyond debate that a court has extremely broad discretion to resolve discovery-related matters, like this one. And denial of a discovery motion is reviewed for abuse of discretion. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 2022 WL 3365083, at *10 (7th Cir. Aug. 16, 2022); *United States v. En Chim*, _F.4th_ 2022 WL 3371432 at *5 (11th Cir. 2022); *Fields v. City of Chicago*, 981 F.3d 534, 551 (7th Cir. 2020); *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015)("We will only reverse a district court's ruling after a clear showing that the denial of discovery resulted in actual and substantial prejudice."). And that discretion includes the authority to protect a party or a witness from annoyance, embarrassment, oppression or undue burden or expense. *See* Rule 26(c).[6]

Discretion, it cannot be too strongly emphasized, denotes the absence of a hard and fast rule. *Langnes v. Green,* 282 U.S. 531, 541 (1931); *Pruitt v. Mote,* 2006 WL 3802822 (7th Cir.2006); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937 (7th Cir. 1995); *United States v. Liebert*, 519 F.2d 542, 547 (3d Cir. 1975); *Rogers v. Loether,* 467 F.2d 1110, 1111–12 (7th Cir.1972)(Stevens, J.); *Balderas v. Illinois Cent. RR Co.*, No. 20 C 1857, 2021 WL 76813, at *1 (N.D. Ill. Jan. 8, 2021). Indeed, on virtually identical facts, two decision-makers can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion. *See United States v. Banks,* 546 F.3d 507, 508 (7th Cir.2008). Indeed, "the district judge's substantial discretion ... ensures inconsistency." *Johnson v. Daley,* 339 F.3d 582, 593–594 (7th Cir.2003). *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). An abuse of discretion occurs when no reasonable person could take the view of the district court. Thus, two judges confronted with the identical records can come to opposite conclusions and for the Appellate

---

[6] Thus, it is not a compelling objection that Mr. Harris, himself, has not claimed that he would be oppressed were the deposition to take place.

9

Court to affirm both. *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008); *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). Here, an appropriate exercise of that discretion allows granting the Plaintiff's Motion For A Protective Order.

It is simply not enough to insist, as the defendant has done, that Mr. Harris may have valuable opinions that can only be learned through his deposition. What those valuable "opinions" may be, the opposition to the Motion for Protective Order does not say; nor does it pause to explain the basis for its claim of entitlement. In any event, the defendant is not entitled on this record to have access to those "opinions." The discretionary factors which underlay Judge Friendly's opinion in *Kaufman* control the permissibility of attempts to depose an otherwise "unwilling expert" – and that is what it appears is the object of Mr. Carroll's insistence that he be allowed to depose Mr. Harris. It bears repeating that Mr. Harris knows nothing about the underlying facts of this case or the divorce case; he only knows what he was told by Ms. Mogul – who, it bears repeating, is Mr. Carroll's lawyer in the divorce case. Moreover, even if the desired deposition were to be abbreviated and decorous – and bitter experience teaches that all too many are not, *see, e.g., Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007); *Shabaz v. Arendell Corp.,* 2012 WL 3201884, 7 (E.D.Wis. 2012); *Vakharia v. Swedish Covenant Hospital*, 1994 WL 75055 9 (N.D.Ill. 1994) – a deposition is costly for the parties, time-consuming for counsel and the witness, and often entails utilization of necessarily limited judicial resources that could be devoted to other cases, "patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 386 (7th Cir. 1996). And while nothing in this Opinion should be construed as suggesting that attorneys are exempt from being deposed – they are not, *see, e.g., FTC v. Advocate Health Care Network*, 162

F.Supp.3d 666, 671 (N.D. Ill. 2016); *Tellabs v. Fujitsu*, 283 F.R.D. 374 (N.D.Ill. 2012) – experience teaches that countenancing needless depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions regarding collateral matters. This case is not exempt from those concerns.

## CONCLUSION

The record in this case does not support the Defendant's charge that the Motion for a Protective Order is part of a "relentless campaign to avoid discovery that will elicit evidence damaging to [Plaintiff's] case." [Dkt. #123 at 9]. Not only does simply "saying so [not] make it so," *see supra* at 7, but needless invective serves no useful purpose.

Granting the Plaintiff's Motion for a Protective Order under the circumstances presented here will neither impair Mr. Carroll in advancing whatever defense to the Amended Pleading is otherwise permissible, nor impair his ability to retain a qualified "expert" to support whatever theories he may properly seek to advance. The Plaintiff's Motion For A Protective Order [Dkt. #121] is granted.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/23/2022