# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| R. DAVID YOST,<br><br>    Plaintiff,<br><br>v.<br><br>MORGAN TIMOTHY CARROLL,<br><br>    Defendant. | Civil Action No. 1:20-cv-5393<br><br>Magistrate Judge Jeffrey Cole |
| MORGAN TIMOTHY CARROLL,<br><br>    Counter-Plaintiff/ Third Party Plaintiff,<br><br>v.<br><br>R. DAVID YOST, AND ANNE YOST CARROLL,<br><br>    Counter-Defendant and Third-Party Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MORGAN CAROLL'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTS ...................................................................................................................................3

III. ARGUMENT .........................................................................................................................3

    A. Legal Standard ...............................................................................................................3

    B. The Court Should Grant Summary Judgment in Favor of Carroll on His Affirmative Defense of Illegality ........................................................................................................4

        1. The Notes Are Unenforceable Because They Served an Unlawful Purpose ..............4

            a. Yost Intended to "Forgive" the Notes; the Transfers Were Gifts, Not Loans ....6

            b. Yost's *Admitted* Note Scheme Was Illegal ............................................................7

            c. The Notes Are Unenforceable as Contrary to Public Policy and Under the Doctrine of *In Pari Delicto* ...................................................................................9

        2. The Notes Are Unenforceable Under the No-Obligation Doctrine, Regardless of Illegality or Yost's Intent to Evade Taxes ................................................................12

    C. Yost is Not a Holder in Due Course and Carroll May Introduce Parol Evidence ..........14

IV. CONCLUSION ....................................................................................................................15

Defendant Morgan Timothy Carroll ("Carroll") respectfully submits this Memorandum of Law in support of his Motion for Summary Judgment on his Amended Affirmative Defense of Illegality.

## I. INTRODUCTION

Between 2003 and 2016, Plaintiff R. David Yost ("Yost") gave his daughter Anne and his son-in-law, defendant Carroll, $7,475,000.00 to purchase various personal residences. Yost then had Anne and Carroll sign promissory notes to disguise the gifts as loans to evade gift tax. According to Yost, he never intended to enforce the notes but rather to have his estate "forgive" the notes upon his death. In other words, the notes were a sham and never intended to create any real legal obligation.

Indeed, Yost testified under oath and authenticated communications establishing:

- *Yost's intent*, at the time he had his daughter and Carroll execute the notes was "*that the notes would be forgiven at . . . [his] . . . death …. that is the notes would be forgiven to Anne and Morgan*";

- Yost had a provision in his estate plan dictating that *the notes would be forgiven at his death*;

- the purpose of the notes was "*so that no gift taxes would be incurred*";

- the notes were "*a formality* [that] may be necessary in a tax audit";

- the notes were "*essential so that the money provided is NOT considered a gift, taxable at 40%*"; and

- in spite of his donative intent, Yost did *not* file gift tax returns for the gifts to his daughter and defendant Carroll, instead relying on the notes to cast the gifts as loans in event of a "tax audit."

Yost's gifts to Anne and defendant Carroll were part of a well-documented scheme to disguise as "loans" gifts to all of his adult daughters, with the express purposes of: (a) evading gift tax; and (b) tracking amounts gifted to each of his children so that there could be a "true-up" at

1


Yost's death whereby the daughters who received less during Yost's lifetime would receive a greater share of his estate at his death.

In line with this scheme, as Yost also testified under oath:

- he ***never considered*** his daughter's or defendant ***Carroll's ability to service the notes*** because he did ***not "think it was relevant"*** as his intent was that "the ***notes would be forgiven at his death***, so Anne and Morgan ***would never have to make any payments on the debt"***;

- Anne and Carroll never made payments as required under the notes; and

- he ***never*** demanded payment on the notes until immediately preceding this lawsuit.

Nonetheless, after Anne and Carroll became embroiled in divorce proceedings, and on apparent advice of Anne's divorce lawyers, Yost first sought to enforce the notes. Yost later filed suit in this Court seeking to enforce two of the notes. Carroll, in turn, alleged (in his amended affirmative defenses) that, among other things, the notes are unenforceable because they were not intended to create a legal obligation but rather were part of an illegal scheme to evade taxes.

As the Court noted in its August 2, 2022 Opinion and Order, the validity of Carroll's illegality defense turns on whether Yost in fact "*said and did what the Amended Pleading alleges*." The material facts of this case, all elicited from Yost under oath, unequivocally establish that Yost *said and did exactly what Carroll alleged in his affirmative defenses*. Yost not only authenticated his statements and actions referenced in the affirmative defenses, but also clarified his intent and the true purpose of the notes. That is, Yost admitted: (a) that he intended to forgive the notes upon his death; and (b) that the notes were a mere formality to gift tax. These facts are undisputed and dictate only one result: judgement in favor of Carroll.

Indeed, the law is clear. Where, as here, the donor intended to forgive notes received *at the time he received the notes,* the transfer is a gift and is subject to gift tax. Period. Disguising that gift as a loan in order to avoid gift taxes is illegal. Period. As such, under well-settled

governing law, the notes are void as against public policy and the Court cannot aid Yost in enforcing the notes. Moreover, even if Yost's scheme was not illegal (meaning even if Yost was merely trying to "avoid" tax), it is equally well-settled that where, as here, parties enter a contract (or a note), understanding that there is no intent to incur a legal obligation, there is no obligation created that can be enforced. *See Nice Ball Bearing Co. v. Bearing Jobbers, Inc.*, 205 F.2d 841, 845 (7th Cir. 1953) (applying Illinois law); *see also Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067–71 (7th Cir. 1992) (citing *Nice Ball Bearing*) (whether a sham note was designed to avoid or evade taxes is irrelevant; the only relevant inquiry is whether the note was intended to be an enforceable note).

For these reasons, the Court should grant defendant Carroll's motion for summary judgment.

## II. FACTS

The material facts that have been admitted by Yost and/or are undisputed are contained in Carroll's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts.[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in Carroll's statement of facts. For the avoidance of doubt, Yost seeks to enforce two promissory notes. The 2015 Note (a rollover of notes from 2009 and 2003) and the 2016 Note (Ex. 1 (Complaint); SOF ¶ 48.) Those notes are governed by Illinois law. (SOF ¶¶ 47, 58; Exs. 23 and 24 (the notes).)

## III. ARGUMENT

**A.  Legal Standard**

A party may move for summary judgment, identifying each claim or defense—or the

---

[1] All cites to the records are to the paragraph(s) in the statement of facts, as "SOF ¶ __." Carroll's statement of facts, in turn, is supported by record cites in an exhibits appendix. The appendix contains an index of exhibits for ease of reference.

3

part of each claim or defense—on which summary judgment is sought. Fed R. Civ. P. 56(a). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. *Id.* Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is not a vehicle for resolving factual disputes. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.* Summary judgment is appropriate when a rule of law as applied to uncontested facts clearly leads to a certain conclusion. Fed R. Civ. P. 56(a). Here, the district court does not have to weigh the evidence and decide whom to believe. Rather, Yost's own testimony and admissions dictate only one result.

**B.     The Court Should Grant Summary Judgment in Favor of Carroll on His Affirmative Defense of Illegality**

The Notes are unenforceable because they were not intended to create a legal obligation but were part of a scheme to evade taxes. Specifically, under well-settled governing law (Illinois), the notes are void as against public policy and the Court cannot aid Yost in enforcing the Notes. Moreover, even if Yost's scheme was not void as against public policy, courts in Illinois (and applying Illinois law) have long recognized that where, as here, the parties did not intend to create a legal obligation, there is no obligation created that can be enforced.

**1.     The Notes Are Unenforceable Because They Served an Unlawful Purpose**

The Notes were part of Yost's scheme to avoid declaring gifts to the Internal Revenue Service ("IRS") and thereby evade taxes. As such, the Notes are void as against public policy and

4

unenforceable.

The starting point for an inquiry into whether Yost's Note scheme was illegal is whether the transfers at issue were gifts or loans. *See Deal v. Comm'r*, 29 T.C. 730, 735-37 (1958). The law on this is clear. If Yost intended to forgive the Notes (at the time he received the Notes), the transfers were gifts, not loans. *See e.g.*, *id*. (transfer documented by purported notes was a gift—and notes were "a mere device to . . . avoid gift tax"—where the donor intended to forgive the notes);[2] *see also Est. of Maxwell v. Comm'r*, 3 F.3d 591, 596-97 (2nd Cir. 1993) ("the notes executed by the daughters were not intended to be enforced and were not intended as consideration for the transfer by the petitioner, and that, in substance, the transfer of the property was by gift.").[3]

Yost's testimony (and communications at the time the Notes were received) is unequivocal. Yost intended to forgive the Notes at the time he received them. ***Thus, the transfers at issue were gifts, subject to gift tax***.

Having established the transfers were gifts, the next inquiry is: did Yost report those gifts to the IRS as required by law? No. Yost admits that. Not reporting the gifts, on its own, is illegal. But Yost went a step further and used the Notes to disguise the gifts as loans. That is the subject of Carroll's Amended Pleading. That is also illegal. As the Court has noted, the salient inquiry in assessing Carroll's illegality defense is: did Yost use the Notes to disguise the gifts to Anne and

---

[2] It is significant that in *Deal*, unlike here, the donor filed a gift tax return, thus alerting the IRS of the claimed exclusions. Indeed, that is the purpose of the gift tax return. To enable the IRS to determine if a claimed exclusion is in fact a gift subject to tax and to track gifts for which a lifetime exclusion may be claimed at the donor's death. Here, Yost admits he did not file gift tax returns but rather intended only to disclose the note arrangement if he was audited, a process that generally reaches back only seven years.

[3] *Putnam v. CIR.*, 352 U.S. 82, 91 (1956); *Storey v. Storey*, 214 F. 973 (7th Cir. 1914); *Drapkin v. Mjalli*, 441 F. Supp. 3d 145 (M.D.N.C. 2020*); In re Kraus*, 386 BR. 785, 835 (D.Kan. 2008); *Est. of Buring v. Comm'r*, 51 T.C.M. (CCH) 113 (T.C. 1985); *Martin v. Commissioner of Internal Revenue*, 1969 WL 1635 (Tax Court 1969).

5

Carroll as loans? Did Yost say and do what Carroll alleged in the Amended Pleading? (*See* Dkt. 128, pp. 14-15.) Yes. Again, Yost's own repeated statements (and sworn testimony) establish that Yost's express purpose for the Notes was "so that the money provided is NOT considered a gift, taxable at 40%." (Emphasis in the original.) As such, the Notes served an illegal purpose.

Finally, having established that the Notes served an illegal purpose, the last inquiry is: can Yost enforce the Notes given that purpose? No. Illinois law is clear: courts will not enforce a contract, including a promissory note, that serves an illegal purpose or is contrary to public policy.

      a.    **Yost Intended to "Forgive" the Notes; the Transfers Were Gifts, Not Loans**

It is undisputed that Yost intended to forgive the Notes at the time he received the Notes. Yost's intent need not be inferred from circumstance, such as a transfer to his family member, lack of consideration, his failure to consider Anne's and Carroll's ability to repay the purported debt, or his failure to demand payment—all of which are present in this case. (SOF ¶¶ 3, 7, 17, 18-24, 73-76.) Rather, Yost has repeatedly and consistently admitted, both in communications contemporaneous with his receipt of the Notes and in sworn testimony in this case, that ***his intent at the times he received the Notes*** was:

- "***it was my intent when I did the original note and it was my intent when I wrote this memo [2015] that the notes would be forgiven . . . that the notes would be forgiven to Annie and Morgan* . . .**" (SOF ¶¶ 15, 30, 38, 50) (emphasis added);

- "***that . . . [all the Notes] would be declared gifts . . . [and] . . . and the daughters would have their properties* . . .** ." (SOF ¶¶ 15, 16, 59) (emphasis added); and

- The Notes (and other notes executed by Anne's sisters) were a way to track amounts gifted to each child so that there could be a "true-up" at Yost's death whereby the daughters who received less during Yost's lifetime would receive "the difference in cash", a greater share of his estate, at his death. (SOF ¶¶ 16, 19, 39, 51, 61.)

In line with his stated intent, Yost had a provision in his estate plan dictating that ***the notes would be forgiven at his death***. (SOF ¶ 17 (emphasis added).) In other words, the funds given to

6

all of Yost's daughters, including those reflected in the Notes, were intended to be gifts. And those daughters receiving smaller gifts than the others during Yost's lifetime (*i.e.*, smaller notes), would receive a greater share from Yost's estate at his death. (SOF ¶¶ 16-19, 39, 51, 61.)

Tellingly, in line with his stated intent, Yost also testified under oath:

- Yost ***never considered*** his daughter's or defendant ***Carroll's ability to service the notes*** because he did ***not "think it was relevant"*** as his intent was that "the ***notes would be forgiven at his death***, so Anne and Morgan ***would never have to make any payments on the debt.***" (SOF ¶¶ 18, 41, 63) (emphasis added); and

- Yost ***never*** demanded payment on the Notes. (SOF ¶¶ 23, 43, 54.)

As such, under these undisputed facts, the transfers memorialized in the Notes were gifts, not loans. This alone, the understanding that notes were not binding obligations, is sufficient to render the notes unenforceable. (*See infra* § 3.)

### b. Yost's *Admitted* Note Scheme Was Illegal

A federal tax is imposed on the transfer of property by gifts with a value of $10,000 or greater, adjusted for inflation. 26 U.S.C. §§ 2501, 2502, 2503(a) and (b); SOF ¶ 8 (Yost testimony). The gift tax must be paid by the donor. 26 U.S.C §§ 2502(c); SOF ¶ 9 (Yost testimony). A donor must file a return disclosing any gift exceeding the exemption amount for the year in which the gift was made. 26 U.S.C. §§ 6019, 6075(b); SOF ¶ 9 (Yost testimony). Here, Yost concedes: (a) he intended to forgive the Notes, making the transfers gifts; (b) that he was required to file gift tax returns; and (c) that the transfers at issue in this case far exceeded the gift tax exemption amounts. (SOF ¶¶ 8-10.) Yet, Yost also admits that he did not file a gift tax return or pay gift tax on the transfers. (SOF ¶ 11.)[4] That, on its own, is illegal. (*See supra*.)

---

[4] Notably, Yost was acutely aware of the tax liability on gifts and his obligation to file a return each year, regardless of whether gift tax will be payable in that year. (SOF ¶ 9.) Indeed, Yost was able to recite, almost verbatim, rules and regulations regarding reporting gifts, annual and lifetime gifting exemptions, and when, exactly, gifts will become subject to a "tax of 45%." (SOF ¶ 8) (Yost deposition testimony). Of course, Yost did not file gift tax returns. (SOF ¶ 11.)

7

Yost, however, went a step further and implemented the Note scheme to assure that he would not have to pay gift tax if audited by the IRS. Without limitation, Yost made the purpose of the Notes crystal clear, to wit:

- "*so that no gift taxes would be incurred*";

- "*as a formality* [that] may be necessary in a tax audit";

- because it was "*essential so that the money provided is NOT considered a gift, taxable at 40%*" (all capitalization in original, emphasis added); and

- as "*necessary . . . to prove to the IRS that the money was not a gift, subject to gift tax of 45%*." (Emphasis added.)

(SOF ¶¶ 12-14, 27, 37, 44, 49, 60.)

That bears repeating. Yost expressly represents (at the very time he is presenting the Notes for execution) that the Notes will be forgiven and are "necessary" and "essential" to assure that he *does not have to pay gift tax*.[5] In short, Yost could not have been any clearer on his intent: to disguise the gifts as loans.

Governing law, in turn, is unequivocal: disguising a gift as a loan to evade gift taxes is illegal. 26 U.S.C. §§ 2501, 2511, and 7201 (Any person who attempts in any manner to evade or defeat any tax or the payment thereof shall be guilty of a felony); *Frederick v. Frederick*, 44 Ill. App. 3d 579, 582 (3d Dist. 1976) (contract was unenforceable as against public policy where drafter's stated purpose was "to escape Federal Estate Taxes."); *Dormeyer v. Haffa*, 343 Ill. App. 177, 180 (1st Dist. 1951) (a contract, the purpose of which is "to cheat and defraud the U.S. government of . . . tax" is an illegal and unenforceable contract); *Heavenly Ham Co. v. HBH*

---

[5] The Notes were part of a larger, well-documented scheme, to disguise gifts to Yost's daughters as "loans." (SOF ¶¶ 12-16.) For instance, in February 2013, Yost hosted a "Yost Family Meeting", with presentations by financial, estate, and tax planning advisors, and at which there was a formal presentation of Yost's already ongoing scheme to provide funds to his daughters and their husbands to purchase homes. (SOF ¶ 20.)

8

*Franchise Co., LLC*, 2005 WL 331558, at *9 (N.D. Ill. Feb. 7, 2005) ("Contracts that are entered into for the purpose of evading taxes may be void as against public policy."); *Est. of Buring v. Comm'r*, 51 T.C.M. (CCH) 113 (T.C. 1985) (where "evidence suggests that a purported loan is a disguised gift and the taxpayer's attempt to camouflage his actions indicates an intentional or conscious failure, or a reckless indifference to *the duty to file a return*, we will not hesitate to uphold the Commissioner's" levy of a fine.)

Under these undisputed facts, the Notes served an illegal purpose.

      c.      **The Notes Are Unenforceable as Contrary to Public Policy and Under the Doctrine of *In Pari Delicto***

Having established that the transfers were intended to be gifts and that Yost's Note scheme was illegal, the next question is: may the Court enforce the Notes? No. Illinois law is clear: courts will not enforce a contract that is contrary to public policy. 810 ILCS 5/3-305(a)(1)(ii) (the right to enforce the obligation of a party to pay an instrument is subject to the defense of the obligor based on, *inter alia,* the illegality of the transaction, which, under the law, nullifies the obligation of the obligor); *Signapori v. Jagaria*, 2017 IL App (1st) 160937 at ¶¶ 18, 24, 28-29, 31-32 (affirming trial court's dismissal of a complaint to enforce the terms of illegal contract); *Ctr. for Athletic Medicine, Ltd. v. Indep. Medical Billers of Illinois, Inc.*, 383 Ill. App. 3d 104, 114 (1st Dist. 2008) (affirming summary judgment in favor of defendant and refusing to enforce contract made for an illegal purpose)*; Vine St. Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 297-99 (2006) (affirming dismissal of claims based on an illegal contract); *O'Hara v. Ahlgren, Blumenfield and Kempster*, 127 Ill. 2d 333, 347-48 (1989) (reversing summary judgment and refusing to enforce contract that was against public policy); *Merchandise Nat. Bank of Chicago v. Kolber*, 50 Ill. App. 3d 365, 370 (1st Dist. 1977) ("A contract designed to accomplish an unlawful purpose is illegal and void."); *Frederick*, 44 Ill. App. 3d at 582 (reversing denial of motion to dismiss and effectively

9

dismissing claim on contract *designed* to evade federal taxes); *Dormeyer*, 343 Ill. App. at 180 (affirming *directed verdict* in favor of defendant and refusing to enforce contract where, as here, the purpose of the contract was to evade taxes).[6]

Similarly, where parties to an illegal contract are *in pari delicto* (at equal fault), Illinois courts (and courts applying Illinois law) will not aid either party, but will leave them without remedy against each other. Indeed, as the Court has noted, this principle has long been applied in Illinois, including in the context of promissory notes. (*See* Dkt. No. 128, pp. 9-12); *see also Peterson v. McGladrey LLP*, 792 F.3d 785, 788 (7th Cir. 2015) ("As far as we can tell, Illinois regularly disallows litigation between one wrongdoer... and another ... whose act may have added to the loss or failed to reduce it.") (citations omitted); *FirstMerit Bank, N.A. v. Quanstrom-Rose L.L.C.*, 2013 WL 6577028, at *2 (N.D. Ill. Dec. 13, 2013) (recognizing defense of *in pari delicto* under Illinois law in context of note action); *JP Morgan Chase Bank, N.A., v. Mal Corp.*, 2009 WL 804049, at *5 (N.D. Ill. Mar. 26, 2009) (recognizing defense of *in pari delicto* under Illinois law); *Bishop v. American Preservers Co.*, 157 Ill. 284, 317-18 (1895) (reversing judgment of trial court, reversing appellate court, and holding "one who has parted with his property under a contract which is against public policy cannot maintain replevin for it."); *Signapori*, 2017 IL App (1st) 160937 at ¶ 32 (refusing to grant the prevailing party fees under contract that violated public policy because parties were *in pari delicto*; thus the court left the parties where it found them); *O'Hara*, 127 Ill. 2d at 348-9.

Illinois law, however, is equally clear that a contract may violate public policy "even where no crime is committed." *Signapori*, 2017 IL App (1st) 160937 at ¶¶ 25-27 (citations

---

[6] Though related to the doctrine of *in pari delicto*, a contract may be void against public policy without the parties being equally at fault. *See O'Hara*, 127 Ill. 2d at 348. Illegality and *in pari delicto* are related but different doctrines.

10

omitted). "Regardless of whether the parties' conduct constitutes a federal crime, the injury upon the third party [defrauding third party banks] . . . is the same." *Id.* at ¶ 27. As this Court noted, the issue is not whether Yost's scheme in fact violated federal law, but whether Yost thought the Notes were required to plausibly avoid filing gift tax returns and avoid gift tax on the transfers. That is, whether Yost said and did what Carroll has alleged. (Dkt. 128, p. 14.) It is Yost's intent that is at issue—his purpose for the having Anne and Carroll execute the Notes. *See Nice Ball Bearing Co.*, 205 F.2d at 846 (applying Illinois law) (contract designed to deceive competitors and not intended to be enforceable); *O'Hara*, 127 Ill. 2d at 348 (fee sharing contract between attorney and non-attorney unenforceable as against public policy); *Frederick*, 44 Ill. App. 3d at 582 (contract was *designed* to evade federal taxes; no discussion of whether contract in fact was illegal); *Dormeyer*, 343 Ill. App. at 180 (same); *Conway v. Garden City Paving & Post Co.*, 190 Ill. 89, 94-95 (1901) (whether contract is, in fact, illegal is immaterial); *see also Herzog Contracting Corp.*, 976 F.2d at 1067–71 (citing *Nice Ball Bearing Co.*) (notes were not intended to create a legally enforceable obligation but were "*intended* to fool the Internal Revenue Service"; no discussion of whether contract was in fact illegal) (emphasis added).[7]

Nonetheless, as demonstrated above, Yost unquestionably thought the Notes were "essential" to escape gift tax. Indeed, Yost's express purpose in documenting the transfers with the Notes was to defraud the IRS. (SOF ¶¶ 12-14, 27, 37, 44, 49, 60.) As the architect of this scheme, Yost can receive no aid from the Court in enforcing the Notes. Thus, even if Yost's scheme did not in fact violate federal law (which it did), the Notes are unenforceable as contrary to public policy and under the doctrine of *in pari delicto*.

---

[7] Put another way, the issue is whether Yost intended the Notes to create a legally binding obligation. That issue is addressed in more detail in Section 2 herein (the no-obligation doctrine).

11

### 2. The Notes Are Unenforceable Under the No Obligation Doctrine, Regardless of Illegality or Yost's Intent to Evade Taxes

Even if Yost's Note scheme was not illegal, and Yost was only trying to "avoid" gift tax, the Notes are still unenforceable. As the Court has noted, "the 'fulcrum' on which the case will pivot will be whether Mr. Yost said and did the things attributed to him by the "Amended Pleading", and not on the legal accuracy of his alleged conclusion that "notes" were necessary to avoid the payment of gift taxes . . . ." (Dkt. 128, pp. 14-15.) In other words, the issue is whether Yost *intended* the Notes to be binding obligations on Anne and Carroll or whether he *intended* the notes as only a "formality [that] may be necessary in a tax audit." Thus, as this Court noted, "the line between permissible tax avoidance and forbidden tax evasion will not even be an issue in the case." (Dkt. 128, pp. 14-15) (citing *Herzog Contracting Corp.*, 976 F.2d at 1068 (whether a sham note was designed to avoid or evade taxes was immaterial; the only relevant inquiry was whether the note was intended to be an enforceable).) [8]

Indeed, it has long been the rule in Illinois (and in courts applying Illinois law) that where the parties to a purported contract, including a promissory note, did not, *at the time of its execution*, intend it to be a binding contract, no contract or legal obligation is created. *See Herzog Contracting Corp.,* 976 F.2d at 1067–71 (citing *Nice Ball Bearing Co.*) (reversing judgment in favor of note holder where, as here, there was evidence that notes were not intended to create a legally enforceable obligation but were "intended to fool the Internal Revenue Service."); *United States v. Aetna Casualty & Survival Co.*, 480 F.2d 1095, 1099 (8th Cir. 1973) (citing *Nice Ball Bearing*

---

[8] This doctrine has been referred to as the "no-obligation" defense. The doctrine, regardless of title, is "assimilated into the general contract doctrine that allows parol evidence to show that a contractual-looking document was not intended to be binding[,]" including evidence that the contract was a sham "intended to fool the Internal Revenue Service" or for some other perceived illegal purpose. *Herzog Contracting Corp.* 976 F.2d at 1070-71.

12

*Co.*) (vacating judgment on contract and *directing judgment* for plaintiff where, as here, there was substantial evidence that a purported release was a sham); *Nice Ball Bearing Co.*, 205 F.2d at 845-46 (applying Illinois law) (*affirming judgment* for plaintiff where, as here, the evidence established that the contract on which defendant relied was a sham and never intended to be a binding agreement); *see also Anderson v. Liles*, 774 F. Supp. 2d 902, 908 (N.D. Ill 2011)(Gottschall, J.); *Great Western Cities, Inc. v. Binstein*, 476 F. Supp. 827, 832 (N.D. Ill. 1979); *Coudert v. Hokin*, 2017 WL 10221323, at *3 (S.D.N.Y. Aug. 23, 2017); *Frederick*, 44 Ill. App. 3d at 580-82 (illegal purpose premised on fact that contract was not intended to create rights or obligations); *Dormeyer*, 343 Ill. App. at 180 (same: purpose of the contract was to evade taxes); *Cohen v. Cohen*, 943 N.Y.S. 2d 790 (2012); *Garrison v. Garrison*, 71 N.C.App. 618, 620 (1984) (if a note is given for tax purposes, with no intention that it be repaid, "the note is a sham" and cannot be enforced); *Champion v. Lillegren,* 411 N.W.2d 428 (Wis. Ct. App., June 4, 1987).

Here, the material facts of this case unequivocally establish that Yost said and did *exactly* what Carroll has alleged in his affirmative defenses. That is, Yost (and Carroll of course) did not *intend* the Notes to create a binding legal obligation. The record on this could not be clearer. Yost's intent was "that the notes would be forgiven . . . that is the notes would be forgiven to Anne and Morgan . . . ." (SOF ¶¶ 15-19, 23, 30, 38, 39, 41, 43, 50, 51, 59, 61.) Yost's express purpose for having Anne and Carroll execute the Notes was "so that no gift taxes would be incurred." (SOF ¶¶ 37, 49.) The Notes were merely a "formality [that] may be necessary in a tax audit." (SOF ¶¶ 12-14, 27, 37, 44, 49, 60.)

Regardless of whether the Note scheme was illegal, the Notes were never intended to create a binding, enforceable obligation. Rather, the Notes were expressly designed to allay Yost's concern that *he* may become liable for millions of dollars in gift taxes. As such, Yost may not

enforce the Notes. (*See supra*.)

C.      **Yost is Not a Holder in Due Course and Carroll May Introduce Parol Evidence**

Finally, any defense to a contract is available in a suit on a promissory note *unless* the plaintiff is a holder in due course. 810 ILCS 5/3-305(a) (1) and (2) (contract defenses available) and (b) (limiting defenses that may be asserted against a holder in due course); *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 119-123 (1993); *Herzog Contracting Corp.* 976 F.2d at 1067-68 (applying Indiana UCC, identical to Illinois). A holder in due course is an "innocent *third party*" who takes a promissory note without notice of any defense to the note. 810 ILCS 5/3-302; *Kedzie*, 156 Ill. 2d at 122; *Drum Const. Co. v. Forbes*, 224 Ill. App. 271, 276-77 (1st Dist. 1922). The purpose of the holder in due course rule is to facilitate negotiability by allowing assignees to take a note free of defenses not obvious on the face of the instrument. *Herzog Contracting Corp.* 976 F.2d at 1070. The issuer of a note—the person to whom the note is made payable—is not a holder in due course. *See Kedzie*, 156 Ill. 2d at 121-22; *Drum Const. Co.,* 224 Ill. App. at 276-77.

Yost is *not* a holder in due course. Tellingly, Yost has made no such claim. Indeed, Yost is not a third party to the transaction. Yost is the issuer of the Notes and the person to whom the Notes are made payable. (SOF ¶¶ 12, 27, 34, 47, 58.) Nor did Yost take the Notes for consideration from the issuer and without knowledge of the fact that: (a) he himself never intended the Notes to be enforceable; and (b) that the purpose of the Notes was to evade gift tax. As such, as previously recognized by the Court, (Dkt. 128), Yost's claims are subject to Carroll's defenses.

Likewise, this Court has already determined that Carroll may use parol evidence (go outside the four corners of the Notes) to establish that the Notes serve an illegal purpose and/or were never intended to be enforceable. (Dkt. No 128, pp. 8-9, 16-18.) Indeed, Illinois courts (and

14

courts applying Illinois law) have consistently held that the parol evidence rule does not bar evidence that a contract served an illegal purpose and/or was not intended to be enforceable.[9]

### IV. CONCLUSION

Based on the foregoing, defendant Morgan T. Carroll respectfully requests that the Court grant his motion for summary judgment.

Dated: September 1, 2022

Respectfully submitted,

Morgan Timothy Carroll

/s/ *John E. Zummo*

Aharon S. Kaye (#6291684)
John E. Zummo (#6239693)
GUTNICKI LLP
4711 Golf Road, Suite 200
Skokie, Illinois 60076
(847) 745-6292
akaye@gutnicki.com
jzummo@gutnicki.com

---

[9] *See, e.g.*, *Dormeyer,* 343 Ill. App. at 180; *Herzog Contracting Corp.* 976 F.2d at 1067-68; *Nice Ball Bearing Co.*, 205 F.2d at 850; *Van Norman v. Young*, 129 Ill. App. 542 (1st Dist. 1906), aff'd, 228 Ill. 425 (1907); *Jost v. Cornelius*, 334 Ill. App. 279 (1948); *Robinson v. Nessel*, 86 Ill. App. 212 (1899); *Anderson v. Liles*, 774 F. Supp. 2d at 908; *Aetna Casualty & Survival Co.*, 480 F.2d at 1099 (citing *Nice Ball Bearing Co.*); *Binstein*, 476 F. Supp. at 832; *see also Cohen*, 943 N.Y.S.2d 790; *Coudert*, 2017 WL 10221323, at *3; *Champion v. Lillegren,* 411 N.W.2d 428; *Garrison*, 71 N.C.App. at 620; 71 A.L.R.2d 382 (1960) (admissibility of oral evidence to show that a writing was a sham agreement not intended to create legal relations).